IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DERENA MARIE MADISON,                )
                                      )
         Plaintiff,                   )
                                      )
      v.                              ) Civil Action No. 11-0997
                                      )
CHAD WEAVER, MICHAEL ZAMPOGNA,        )
and FNU COOLEY, as individuals        )
and JOHN DOE and RICHARD DOE,         )
as individuals,                       )
                                      )
         Defendants.                  )

MEMORANDUM

Gary L. Lancaster,                              January 3, 2012
Chief Judge.

This is an action in civil rights and tort. Plaintiff, Derena Marie Madison, alleges that defendants, Chad Weaver, Michael Zampogna, FNU Cooley and two other unidentified officers of the Pennsylvania State Police, violated her Fourth Amendment rights by assaulting her with pepper spray, cold water, and urine while she was in custody and in restraints.

Defendants Weaver, Zampogna and Cooley filed a partial motion to dismiss, arguing that plaintiff's tort claims are barred by sovereign immunity. [Doc. No. 7]. Plaintiff argues that sovereign immunity does not bar the claims, because the officers were not acting within the scope of their employment.

1

For the reasons set forth below, the partial motion to dismiss will be denied.

I. Background

Accepting Ms. Madison's allegations as true, the following is the factual predicate of the case against defendants.

On February 3, 2011, at approximately 2:30 a.m., defendants Mr. Weaver and Mr. Zampogna, Pennsylvania State Police troopers, initiated a traffic stop on a vehicle owned by Ms. Madison. On Mr. Weaver's request, the driver of the vehicle, Jamie Cornell, exited the vehicle. The troopers placed him under arrest for driving while intoxicated. Ms. Madison remained seated as a passenger in the vehicle while the stop and arrest occurred.

After Mr. Cornell was arrested, Mr. Weaver threatened to have the vehicle towed from the scene and Ms. Madison exited the vehicle to protest. She did not strike or kick any defendant. Ms. Madison was then placed under arrest and charged with public drunkenness and disorderly conduct; she was handcuffed and her feet were restrained using manacles.

Ms. Madison and Mr. Cornell were transported to the Troop B State Police Barracks in Fayette County, Pennsylvania, where Ms. Madison, with hands still restrained behind her back,

2

was placed on a bench. Her feet were shackled to the bench. As she sat on the bench, Mr. Weaver twice sprayed Ms. Madison's face, head and body with pepper spray, without justification. The other defendants saw the spraying, but took no action to prevent it. Ms. Madison alleges that the actions were for the purpose of torturing her.

Ms. Madison, in pain and unable to wipe the pepper spray from her face, called for help. In response, several defendants carried her downstairs and outside the barracks. She was unable to identify the defendants who carried her, because she was blinded by the pepper spray. Once outside, one or more of the defendants, whose identities are likewise unknown, doused her with large quantities of cold water. Ms. Madison blacked out momentarily, and fell to her knees in the snow. When she regained consciousness, she felt and smelled urine on her head, face, neck, and person. She believes that while she was unconscious, one or more of the defendants urinated on her. Ms. Madison remained handcuffed and in leg manacles throughout this period.

Ms. Madison was then taken back inside the barracks, re-chained to the bench, and later released. She was not offered medical assistance or an opportunity to decontaminate from the pepper spray.

3

Ms. Madison filed suit, asserting three claims: (1) violation of her constitutional rights, pursuant to 42 U.S.C. § 1983; (2) intentional infliction of emotional distress; and (3) assault and battery.

II. Standard of Review

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, a plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570)). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"

4

Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555)); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("The District Court . . . may disregard any legal conclusions."). The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.

We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 556, 563 n.8. Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss should not be granted if plaintiff alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8.

III. Discussion

Defendants claim sovereign immunity with respect to plaintiff's tort claims of intentional infliction of emotional distress and assault and battery, asserted under Pennsylvania law. As state police officers, defendants claim immunity under 1 Pa. Cons. Stat. § 2310, which declares that "the Commonwealth, and its officials and employees acting within the scope of their

duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." (emphasis added). The General Assembly reiterated the grant of sovereign immunity in 42 Pa. Cons. Stat. § 8522(a), noting that sovereign immunity is waived as a bar to an action "against Commonwealth parties" only in the instances set forth by statute. A "Commonwealth party" is defined as a "Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa. Cons. Stat. § 8501 (emphasis added).

The parties do not dispute that the exceptions to immunity provided by the General Assembly are inapplicable to the facts of this case. See 42 Pa. Cons. Stat. § 8522(b) (listing nine exceptions to sovereign immunity). Rather, plaintiff argues that, during the incident on February 3, 2011, the defendant officers were not acting within the scope of their duties or employment as required by Sections 2310 and 8501.

Pennsylvania has adopted the Restatement (Second) of Agency definition of conduct "within the scope of employment." Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000). See also Swaney v. Jordan, No. 10-521, 2011 WL 1485969, at *6 n.11 (W.D. Pa. April 19, 2011) (noting that the Pennsylvania Superior Court has adopted the standard, and the U.S. Court of Appeals

6

for the Third Circuit has predicted that the Supreme Court will follow the holding). "According to the Restatement, 'conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master[.]'" Brumfield, 232 F.3d at 380 (quoting Restatement (Second) Agency § 228). Commonwealth employees are immune from liability due to intentional misconduct, so long as the employee is acting within the scope of his or her employment. See Faust v. Commonwealth Dep't of Revenue, 592 A.2d 835, 839 (Pa. Commw. Ct. 1991) (finding that intentional tort claims against Commonwealth employees "are not within the narrow exceptions" to immunity provided by statute, and therefore, may be barred by sovereign immunity). Here, the second prong of the test is established by the facts alleged in the complaint; the incident occurred while defendants were on duty and at the police barracks. The parties, however, dispute whether the first and third prongs of the test are satisfied.

The issue of whether a state official's conduct is "within the scope" of his or her duties for purposes of tort immunity arises with some frequency. "Under Pennsylvania law, even unauthorized actions taken by an employee can fall within the scope of his or her employment if they are 'clearly

7

incidental' to his or her employer's objectives." Strothers v. Nassan, No. 08-1624, 2009 WL 976604 at *8 (W.D. Pa. April 9, 2009) (quoting Brumfield, 232 F.3d at 381). When determining whether acts are within the scope of employment, courts have considered the purpose of the act, including whether an assault was committed for personal reasons or with intent to perform the business of the employer. See, e.g., Swaney, 2011 WL 1485969 at *7 (denying defendants' motion to dismiss, but noting that defendants could move for summary judgment on immunity grounds if discovery showed that "they acted pursuant to their employment responsibilities rather than pursuant to personal motives unrelated to law enforcement.")

Defendants argue that subduing persons is one of the acts law enforcement officers are employed to perform; officers are also permitted to use force, if necessary, in the commission of their duties. Defendants also argue that in effectuating a traffic stop and dealing with an "out-of-control person," the officers were intending to serve the purposes of their "master," the Commonwealth of Pennsylvania. Plaintiff responds by arguing that, according to the facts alleged in the complaint, Ms. Madison was already subdued and shackled at the time the troopers applied pepper spray, water and urine; therefore, she argues, the acts were not related to "subduing" her and were not examples of necessary force. In addition, Ms. Madison argues

8

that the alleged acts were meant to degrade and humiliate her, rather than to serve any purpose of the police or the Commonwealth of Pennsylvania.

Plaintiff alleges that defendants assaulted her while she was shackled and defenseless, using pepper spray, cold water and urine. Taking these allegations as true, the court cannot say that such acts are "clearly incidental" to the duties of law enforcement officers. Officers may be acting within the scope of their employment when they use force to arrest a resisting suspect, Shoop v. Dauphin County, 766 F. Supp. 1327, 1334 (M.D. Pa. 1991), or when they investigate a suspicious situation, Brautigam v. Fraley, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010); however, when a suspect is in custody and fully restrained, the acts alleged here do not serve any purpose of the police or constitute the kind of conduct police are employed to perform. Certainly, troopers serve no legitimate law enforcement purpose by urinating on a person in custody. Plaintiff's allegations of assault outside the police barracks suggest personal motivation, rather than intent to serve the Commonwealth of Pennsylvania. Therefore, defendants are not entitled to sovereign immunity based on the pleadings.[1]

---

[1] At least one court has noted the tension between a section 1983 claim and overcoming immunity for tort claims. See Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 683 n.6 (M.D. Pa. 2010) ("A finding that the Defendants were acting outside the scope of

9

IV. Conclusion

Accordingly, the court will deny defendants' partial motion to dismiss. An appropriate order follows.

---

their employment may foreclose a section 1983 claim as the Defendants may not then be acting under color of state law.") Although the issue need not be decided now, this court believes that section 1983 liability is not precluded by a determination that Commonwealth employees were acting outside the scope of their employment for purposes of sovereign immunity. The criteria for acting under color of state law are simply different than the criteria for acting within the scope of one's employment. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 n.18 (1982) (noting that, with respect to section 1983, "state employment is generally sufficient to render the defendant a state actor").

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERENA MARIE MADISON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHAD WEAVER, MICHAEL ZAMPOGNA, ) <br> and FNU COOLEY, as individuals ) <br> and JOHN DOE and RICHARD DOE, ) <br> as individuals, ) <br> ) <br> Defendants. ) | Civil Action No. 11-0997 |

ORDER

AND NOW, this 3rd day of January 2012, upon consideration of defendants' partial motion to dismiss, and any responses thereto, IT IS HEREBY ORDERED that defendants' motion is DENIED without prejudice to defendants' right to raise the issue of immunity in a summary judgment motion pursuant to Rule 56, on a fully developed record.

BY THE COURT:

_____, C.J.
Hon. Gary L. Lancaster,
Chief United States District Judge

cc: All Counsel of Record